UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CYNTHIA GILLINGHAM,

                Plaintiff,                       MEMORANDUM & ORDER

   -against-                                 06-CV-2915 (NGG) (MLO)

GEICO DIRECT,

                Defendant.
-----------------------------------------------------------------X

NICHOLAS G. GARAUFIS, U.S. District Judge.

      Plaintiff Cynthia Gillingham ("Plaintiff" or "Gillingham") brings this action against Defendant Government Employees Insurance Company ("GEICO" or "Defendant") alleging, inter alia, disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA") and retaliation under the ADA. Defendant has submitted a motion for partial dismissal of Plaintiff's claims, specifically seeking dismissal of Claims 2 through 9 of the Plaintiff's Complaint,[1] claims not arising under the ADA. For the reasons that follow, Defendant's motion is granted in part and denied in part.

**I.    Background**

      Plaintiff worked as a Claims Examiner for GEICO from 1985 to on or about August 30, 2004. (Complaint ("Compl." ¶ 9.) Plaintiff alleges that in 1997, she was injured in an automobile accident and "sustained substantial injuries to her back and neck, resulting in one or more permanent, chronic disabilities." (Plaintiff Cynthia Gillingham's Memorandum of Law in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss ("Pl. Mem.") at 1 (citing Compl. ¶

---

[1] Defendant seeks dismissal of Claim 4 only to the extent that the Claim alleges retaliation under the Family Medical Leave Act.

10).) Plaintiff also alleges that she suffers from shifting of the knee caps, also known as disabilities of the patella alta, and degenerative disc disease. (Compl. ¶ 10.) She also suffers from clinical depression and general anxiety disorder. (Id.) Because of her disabilities, Plaintiff underwent back and spinal surgery on February 1, 1999 and spinal fusion surgery on June 13, 2000. (Compl. ¶ 11.)

Plaintiff alleges that "[i]t was only after the onset of Gillingham's disabilities in October 1997. . . that Gillingham was subjected to an ongoing and continuing course of discrimination, harassment, and retaliation culminating in her discharge from employment on August 30, 2004. (Compl. ¶¶ 9, 32, 40, 43, & 47.) Defendant's policies provide for GEICO employees to work a flex schedule. (Pl. Mem. at 2.) Plaintiff concedes that Defendant "[i]nitially . . . reasonably accommodated" Plaintiff's disabilities by allowing her to work a flex schedule from 5:30 a.m. until 1:15 p.m. (Compl. ¶ 23.) However, on August 3, 2003, Plaintiff alleges that she was "stripped of her accommodation" and was reassigned to a 7:00 a.m. to 3:30 p.m. shift. (Compl. ¶ 24.) Plaintiff further states that this new shift was in violation of her treating physicians' directions that she must avoid sitting more than thirty minutes and avoid stress, which was elevated when she worked later in the day, due to "mental exhaust[ion]." (Id.) Plaintiff complains that Defendant's actions "exacerbated" Gillingham's disabilities, "resulting in additional disabilities, and causing extreme and acute emotional distress and mental anguish." (Compl. ¶ 27.) Finally, Plaintiff's Complaint reviews a litany of ways in which Defendant allegedly harassed, discriminated against, and retaliated against Plaintiff through a "willful campaign of fear, intimidation, and harassment in an effort to constructively discharge Gillingham by forcing her to resign." (Id. (citing Compl. ¶¶ 31-44).)

Plaintiff states that, as a result of Defendant's actions "aggravating her disabilities," she had to take a leave of absence under the Family and Medical Leave Act ("FMLA"). (Id. at 3 (citing Compl. ¶ 44).) Defendant gave Plaintiff an ultimatum that, if she did not return to work by the end of her FMLA leave on August 30, 2004, she would be deemed to have voluntarily resigned her employment. (Id.) Defendant sent Plaintiff a letter advising her that her FMLA leave "will end of Friday August 27, 2004" and that her "options are to return to work [by that date] or to resign." (Compl. ¶ 44.) When Plaintiff did not return to work that day, Defendant deemed her to have quit her job; however, Plaintiff argues that she never resigned her employment. (Compl. ¶ 44.)

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") in April 2004 alleging disability discrimination under the New York State Human Rights Law ("NYSHRL") in that GEICO had refused to continue her schedule accommodation. (Compl. ¶ 34.) In June 2004, Plaintiff filed a second complaint with the NYSDHR alleging that she was retaliated against following the filing of that first NYSDHR complaint. (Id.) By Determination and Order After Investigation dated November 23, 2005, the NYSDHR dismissed Plaintiff's first complaint because she had no probable cause to believe that GEICO had discriminated against her on the basis of her disability or had failed to accommodate her alleged disability in violation of the New York Human Rights Law. Plaintiff cross-filed the first and second NYSDHR complaints with the U.S. Equal Employment Opportunity Commission (" EEOC"), which issued right to sue notices on March 15, 2006 and March 29, 2006. Plaintiff filed this lawsuit thereafter.

In her Complaint, Gillingham asserts a number of claims against GEICO, as follows: (1)

Americans with Disabilities Act Violation; (2) Family and Medical Leave Act Violation; (3) State Human Rights Law Violation; (4) Unlawful Retaliation under Federal Law; (5) Unlawful Retaliation under State Law; (6) Violation of First Amendment; (7) New York Civil Rights Law Violation; (8) Violation of the New York State Constitution; and (9) Intentional and/or Negligent Infliction of Emotional Distress.

## II. Analysis

### A. Standard of Review

When a district court considers a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), it "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). A motion to dismiss should only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts ... which would entitle him to relief." King v. Simpson, 189 F.3d 284, 286-87 (2d Cir. 1999).

### B. Plaintiff's FMLA Interference and Retaliation Claims (Claims 2 and 4)

In Claim Two, Plaintiff alleges that Defendant's actions violated the FMLA. Defendant argues that Plaintiff's FMLA (Claim 2) and FMLA retaliation (Claim 4) claims must be dismissed. The FMLA grants to eligible employees the right to take up to twelve work weeks per year of unpaid leave due to a serious health condition that prevents the employee from performing his or her work function. See 29 U.S.C. § 2612(a)(1). At the end of the leave the

4

employee has the right pursuant to the FMLA to return to the position he or she had before or an equivalent position. See id. § 2614(a). "However this right is not absolute. The employee has no right to be restored to the position he or she held if the employee is unable to perform an essential function of the position because of a physical or mental impairment." Esser v. Rainbow Advertising Sales Corp., 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006) (citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161 (2d Cir.1999). The FMLA prohibits an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1). Furthermore, the statute "'creates a private right of action . . . against any employer . . .' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006) (citing Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724-25 (2003)).

A plaintiff may raise separate causes of action under the FMLA for "interference" and "retaliation." See Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004).

### i. FMLA Interference Claim (Claim 2)

To establish a prima facie case for interference under the FMLA, a plaintiff must establish: "(1) that she is an eligible employee under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." Kennebrew v. N.Y.C. Hous. Auth., No. 01 Civ. 1654, 2002 WL 265120, at *19 (S.D.N.Y. Feb.26, 2002) (internal quotation and citation omitted); see also Sabatino v. Flik Int'l Corp., 286 F. Supp. 2d 327, 335-36 (S.D.N.Y. 2003); Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004) (holding that to make out a claim for

5

interference under the FMLA, a plaintiff must show that "she was denied benefits to which she was entitled under the FMLA"); Roberts v. Ground Handling, Inc., 2007 U.S. Dist. LEXIS 23441, at *25 (S.D.N.Y. 2007). Here, Defendant contests Plaintiff's establishment of the fifth element set forth above.

With regard to the fifth element, that a defendant denied a plaintiff benefits to which he or she is entitled under the FMLA, the Second Circuit has held that –

> A plaintiff need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both. . . . No scheme shifting the burden of production back and forth is required.

Sista, 445 F.3d at 175-76 (internal citations omitted); Potenza, 365 F.3d at 167 (holding that plaintiff could not maintain a claim for either interference or retaliation because he could not demonstrate that defendant considered his FMLA leave a "negative factor" in its decision to terminate him).

In this case, Defendant argues that Plaintiff received all of the benefits to which she was entitled pursuant to the FMLA, namely the leave itself. Plaintiff acknowledges that she received FMLA leave and was offered to return to work upon the expiration of that leave. (Compl. Ex. A.) Plaintiff argues, however, that GEICO's offer to return must be a "meaningful one," and by offering Gillingham "a return, without the accommodation she needed, in essence, defendant denied Gillingham a meaningful right to return and therefore denied her rights under the FMLA." (Pl. Mem. at 6.)

To be sure, the FMLA requires that, at the end of the leave, an employer grant the

6

employee the right to return to the position she had before or an equivalent position. See 29 §
2614(a). The court agrees with Plaintiff, however, that "the fact that defendant provided
Gillingham with leave is not the end of the inquiry" because alleges that Defendant's offer for
her to return to work was not a "meaningful one." (Pl. Br. at 5-6.) Specifically, the Complaint
alleges that Plaintiff's treating physicians had submitted medical documentation attesting to
Plaintiff's disabilities and that Defendant "knowingly refused" to accommodate her. (Compl. ¶
29.) Plaintiff argues that:

> "[D]efendant knew that by offering plaintiff a return, without
> affording her the necessary accommodation, it was at least likely
> that she would not return. In order for Gillingham to exercise her
> FMLA right to return, the offer to return must be a meaningful one.
> By offering her a return, without the accommodation she needed,
> defendant denied Gillingham a meaningful right to return and
> therefore denied her rights under the FMLA."

(Pl. Br. at 6.)

Where there is no dispute that a plaintiff was given FMLA leave and that she was offered
the right to return to her position, the plaintiff cannot show that she was denied benefits to which
she is entitled under the FMLA. Esser v. Rainbow Advertising Sales Corp., 448 F. Supp. 2d 574,
580 (S.D.N.Y. 2006). Here, Gillingham received FMLA leave, but she is entitled to develop the
factual record through the discovery process to explore whether GEICO's offer for her to return
to work was "meaningful" under the FMLA. Accordingly, Defendant's motion to dismiss Claim
2, which alleges interference with Plaintiff's FMLA's rights, is denied.

### ii. Retaliation Claim (Claim 4)

To make out a prima facie case of retaliation under the FMLA, a plaintiff "must establish
that: 1) he exercised rights protected under FMLA; 2) he was qualified for his position; 3) he

suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).[2] To establish a retaliation claim under the FMLA, Plaintiff must demonstrate that her taking FMLA leave constituted "a negative factor in [Defendant's] decision to terminate" him or her. Sista, 445 F.3d at 176; Hale v. Mann, 219 F.3d 61, 68 (2d Cir. 2000) (holding that the FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking leave pursuant to the FMLA.")

Plaintiff's Complaint does aver that GEICO offered to let Plaintiff return to work at the conclusion of her FMLA leave and that Defendant advised her, in advance of her decision not to return to work, that such a decision would result in the termination of her employment. However, Plaintiff has sufficiently alleged that her leave was a "negative factor," see Sista, 445 F.3d at 175-76, in GEICO's decision to her. Under the liberal pleading standards set forth above, such allegations are sufficient at this stage of the litigation to survive a motion to dismiss. As with Plaintiff's FMLA interference claim, Plaintiff is similarly entitled, at this point, to develop

---

[2] Retaliation claims brought under the FMLA are examined under the three-step burden-shifting rules established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under the test set forth in McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). The employer's burden is "merely one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). If the employer satisfies that burden, the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). In addition, the plaintiff must submit evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997).

the factual record to ascertain what impact her FMLA leave had on Defendant's decision to terminate her. Accordingly, Defendant's motion to dismiss Claim 4 alleging retaliation in violation of the FMLA is denied.

### C. Plaintiff's Disability Discrimination and Retaliation Claims (Claims 3 and 5)

In Counts 3 and 5, Plaintiff alleges that Defendant discriminated and retaliated against her under the New York State Human Rights Law ("NYSHRL"). Defendant argues that Plaintiff's NYSHRL disability discrimination claim (Claim 3) and retaliation claim (Claim 5) must be dismissed under the theory of election of remedies.

NYSHRL Section 297(9) provides in pertinent part that:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights."

Plaintiff argues that her termination was not the subject of her NYSDHR complaints, since she was terminated from GEICO after she filed those complaints. She further alleges that this court is the proper forum for the litigation of her accommodation and retaliation claims because her termination violated state law. Plaintiff correctly notes that several of the events alleged in the instant Complaint, particularly her termination, arose after the two NYSDHR complaints were filed. (Pl. Mem. at 14.)

Gillingham cites to numerous administrative law cases for the proposition that, so long as the issues raised in this action are "reasonably related" to the NYSDHR complaint, those claims and evidence related to those claims may be litigated in this court. (Pl. Mem. at 15 (citing Fitzgerald v. Henderson, 251 F.3d 345 (2d Cir. 2001).) Gillingham argues that "[a]s plaintiff did

9

not elect her remedies with regard to her termination of employment, of necessity, her state law claims regarding reasonable accommodation and retaliation survive, as they are intrinsically tied to and are a part of a continuing pattern culminating in her fictionalized 'resignation.'" (Pl. Mem. at 17.) However, Plaintiff herself acknowledges that the instant Complaint is "substantially related" to the NYSDHR complaints, though she argues that she "either did not explicitly raised [sic] those claims before the State Division of Human Rights or the SDHR never addressed them." (Id.)

As I wrote for the unanimous panel when sitting on the Second Circuit by designation in the case of York v. Assoc. of the Bar, "claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." 286 F.3d 122, 127 (2d Cir. 2002) (citing Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir.1995). Thus, the question under New York law is whether these claims were brought before the NYSDHR. I find that they were. New York courts have repeatedly held that where termination is alleged to be part of an ongoing process of discrimination and retaliation, the NYSDHR's disposition of related claims bars subsequent state claims; this has been held to be so even where termination itself is not included in the NYSDHR complaint. See, e.g., Spoon v. Amer. Agriculturist, Inc., 103 A.D.2d 929, 478 N.Y.S.2d 174 (3d Dept. 1984). In Spoon, the Third Department held that:

> The question is whether a sufficient identity of issue exists between the complaint before the division and the instant claim. A review of the record confirms that the two retaliation claims before the court and the complaint before the division are undeniably similar. Although additional facts appear in the subject complaint, including the fact of plaintiff's termination from employment, it is quite clear that these facts emanate from a continuing process of alleged retaliation giving rise to one claim, not several. This being the case, plaintiff's initiation of the complaint before the division

> constitutes an election of remedies which effectively deprived the court of subject matter jurisdiction.

103 A.D. at 930, 478 N.Y.S.2d at 174. Similarly, in Craig-Oriol v. Mount Sinai Hosp., 201 A.D.2d 449, 607 N.Y.S.2d 391 (2d Dept. 1994), the Second Department dismissed an action where the plaintiff had previously pursued an administrative action before the NYSDHR alleging, inter alia, that the defendant had discriminated against her during her employment because of her age. The Division of Human Rights found her claim to be unfounded, and the plaintiff brought an action in state court adding claims of racial discrimination. The Second Department affirmed the judgment of the New York State Supreme Court barring the claim, finding her state-court action to "encompass[] the same allegedly invidious behavior on the part of her employer over the same period of time" despite the assertion of new claims.

Despite the additional factual averments surrounding Plaintiff's termination, the court finds her state claims to be reasonably related to the alleged discrimination and retaliation that was the subject of the NYSDHR dismissals. Plaintiff decided to bring claims before the NYSDHR and then failed to timely appeal from its determinations, even though she was notified of her right to do so. (Def. Mem. at 4 (citing Affirmation of Roger H. Briton in Support of Partial Motion to Dismiss at Exs. 3 & 4).) Thus, having elected her remedies, Plaintiff cannot now pursue these state HRL claims in this action. Accordingly, Claims 3 and 5 are dismissed.

### D. Plaintiff's Federal (Claim 6) and State (Claim 8) Constitutional Claims

In Claims 6 and 8, Plaintiff alleges that Defendant violated her First Amendment rights and also other rights under the New York State Constitution. Defendant argues that Plaintiff's Federal (Claim 6) and State (Claim 8) constitutional claims must be dismissed.

Claim 6 deals with a First Amendment claim against GEICO; however, the First Amendment does not apply to private actors. Loce v. Time Warner Entm't, 191 F.3d 256 (2d Cir. 1999). In Loce, the Second Circuit held that, to bring a First Amendment claim against a private entity's relationship to the state, a plaintiff must demonstrate a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. at 266. It is undisputed that GEICO is a privately owned entity and a subsidiary of a publicly-traded entity. (See GEICO's 7.1 Statement; Def. Mem. at 6.) Thus, it is a private – not a state – actor. Plaintiff has not alleged any relationship between Defendant and the state such that this court can construe GEICO's action as a state action. The court rejects Plaintiff's arguments that GEICO's provision of insurance to government employees or its regulation by the New York State Insurance Department somehow makes it a state actor. (See Pl. Mem. at 26.) GEICO is in fact dissimilar from the only private entity that a court found to be a state actor under Plaintiff's theory, see Under 21 v. City of New York, 126 Misc. 2d 629, 481 N.Y.S.2d 632, 642 (Sup. Ct. N.Y. County 1984), since Defendant GEICO does not perform a public function normally entrusted to the state and receive substantial funding from the state for that purpose. Plaintiff has offered no additional evidence to support its arguments that GEICO is a state actor.

Similarly, Claim 8, which deals with an alleged violation of free speech and equal protection under the New York State Constitution, must be dismissed because Gillingham has not alleged any state action by Defendant. See Lown v. Salvation Army Inc., 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005).

Thus, the court dismisses Claims 6 and 8.

### E. Plaintiff's New York Civil Rights Law Claim (Claim 7)

Defendant further argues that Plaintiff's New York Civil Rights Law ("NYCRL") claim (Claim 7) must be dismissed. NYCRL Section 40-c(2) provides in pertinent part –

> No person shall because of . . . disability, as such term is defined in section two hundred ninety two of the [NYSHRL], be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm [or] corporation. . . .

Furthermore, NYCRL Section 40-d provides that "[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general." Defendant argues for dismissal since failure to comply with the statutory notice requirement "mandates dismissal of the claim." (Def. Mem. at 8 (citing Shepard v. Frontier Comm. Servs., Inc., 92 F. Supp. 2d 279, 287 (S.D.N.Y. 2000); Harris v. Allstate Ins. Co., 83 F. Supp. 2d 423, 432 (S.D.N.Y. 2000); (Harvey v. NYRAC, Inc., 813 F. Supp. 206, 212 (E.D.N.Y. 1993); Silver v. Equitable Life Assurance Soc., 168 A.D.2d 367, 563 N.Y.S.2d 78, 80 (1st Dept. 1990).

Plaintiff has recognized this "procedural infirmity" and has volunteered to file such notice with the New York State Attorney General. (Pl. Mem. at 29.) Significantly, all of Defendant's cited cases are dismissals on summary judgment. Plaintiff argues that "no party will suffer any prejudice if such notice is provided now. . . . As the parties have no engaged in any discovery, and we are still at the pre-joinder stage of the litigation, it may not be said that such notice is not at or contemporaneous with the commencement of this action." The court agrees that complying with such notice can be achieved within the parameters of the statutory language by providing procedural notice to the New York State Attorney General within ten days of the entry of this Order. Accordingly, Defendant's motion to dismiss Claim 7 is denied at this time.

### F. Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (Claim 9)

In Claim 9, Plaintiff alleges that Defendant intentionally and negligently inflicted emotional distress upon her. Defendant argues that these claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") (Claim 9) must be dismissed. Defendant argues that Plaintiff's IIED claim is barred by the statute of limitations and that Plaintiff's NIED claim is barred by the exclusive remedy doctrine of the New York Workers' Compensation Law. I will address each in turn.

#### i. Intentional Infliction of Emotional Distress

IIED claims must be brought within one year. N.Y.C.P.L.R. § 215(3); Goldner v. Sullivan, Gough, Skipworth, Summers & Smith, 482 N.Y.S.2d 606 (4th Dept. 1984). The parties do not dispute that Plaintiff's last day of employment was August 30, 2004, which was more than one year before the instant action was filed on June 12, 2006. (Def. Mem. at 8.) However, Plaintiff argues that "[g]iven GEICO's ongoing, outrageous actions, the intentional infliction of emotional distress . . ., while commencing during Gillingham's employment . . . has continued to date." (Pl. Mem. at 30.) Plaintiff argues that, so long as one of the "violative acts occurs in a timely manner, other alleged untimely acts are deemed timely as a continuing pattern." (Id. (citing Manliguez v. Joseph, 226 F. Supp. 2d 377 (E.D.N.Y. 2002).) Plaintiff claims, for example, that Defendant "continued to deny that it engaged in conduct against the plaintiff while she was still employed in defending plaintiff's SDHR complaints." (Pl. Mem. at 30.) The gist of Plaintiff's arguments is that Defendant continued to inflict emotional distress by defending itself in the NYSDHR complaints, which were not dismissed until February 24, 2006,

fewer than four months before the instant action was commenced and that she needed to delay filing this claim pending the conclusion of the administrative process. (Id.) Plaintiff essentially argues that equitable tolling should be applied to her claim. (Id. (citing Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993); Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994); Long v. Frank, 22 F.3d 54 (2d Cir. 1994)).)

In the first place, the only post-termination conduct Plaintiff points to is Defendant's continuing denial of liability to Plaintiff. The court agrees with Defendant that this post-termination conduct is insufficient to toll the statute of limitations. An IIED claim can be sustained only by conduct "so outrageous in character and so extreme in degree, as to be regarded as atrocious, and utterly intolerable in a civilized community." Fisher v. Maloney, 43 N.Y.2d 553, 302 N.Y.S.2d 991, 994 (1978). Defending itself against a NYSDHR claim hardly rises to such a level. Furthermore, courts in this Circuit have been clear that the statute of limitations for IIED claims is not tolled based on pending administrative proceedings. Tekula v. Bayport-Blue Point School Dist., 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003) (finding IIED claim barred under statute of limitations despite an earlier NYSDHR filing); Sharabura v. Taylor, 03-CV-1866 (JG), 2003 WL 22170601, at *4 (holding that EEOC claim does not toll IIED claim under statute of limitations) (E.D.N.Y. 2003); Cabrera v. Quik Park Columbia Garage Corp., 00-CV-3576 (JG), 2000 WL 1897348 (E.D.N.Y. 2000) (the filing of an EEOC claim does not toll the statute of limitations for an IIED claim).

Accordingly, there is no basis for the court to apply equitable tolling to Plaintiff's IIED claim. Thus, the claim is barred by the statute of limitations.

### ii. Negligent Infliction of Emotional Distress

Under the exclusive remedy doctrine of New York's Workers' Compensation Law ("NYWCL"), an employee may not sue her employer for a negligence-based injury which arose out of and in the course of her employment. N.Y. Workers' Comp. Law §§ 11, 29(6). The statute provides in pertinent part that –

> The liability of an employer prescribed by [the Workers' Compensation Law] shall be exclusive and in place of any other liability whatsoever to such employee . . . at common law or otherwise on account of such injury.

N.Y. Workers' Comp. Law § 11. The New York Court of Appeals has held that it is an "arrogation of jurisdiction" for a court to consider the merits of a negligence tort claim where the claim falls within the scope of coverage of the Workers' Compensation Law. O'Rourke v. Long, 41 N.Y.2d 219, 221, 391 N.Y.S.2d 409 (N.Y. 1976).

Here, Plaintiff's NIED claim clearly arises out of her employment with Defendant, and thus Plaintiff must pursue her exclusive remedy under the Workers' Compensation Law, not a tort claim. Thus, Plaintiff's IIED claim is barred by the statute of limitations and Plaintiff's NIED claim is barred by the exclusive remedy doctrine of the New York Workers' Compensation Law. Accordingly, Claim 9 is dismissed.

### III. Conclusion

For the foregoing reasons, the court holds that: (1) Defendant's motion to dismiss Claims 3, 5, 6, 8 and 9 is GRANTED; (2) Defendant's motion to dismiss Claims 2 and 4 is DENIED;

and (3) Defendant's motion to dismiss Claim 7 is DENIED provided that Plaintiff serves notice of this claim with the New York State Attorney General to cure the acknowledged procedural infirmity.

SO ORDERED.

Dated: January 18, 2008  /s Nicholas G. Garaufis
      Brooklyn, N.Y. NICHOLAS G. GARAUFIS
                      United States District Judge